ANDREW NELSON

*vs.*

JOHN ROBSON.

The plaintiff delivered to the defendant certain wheat, the property of the plaintiff, and at the time of the delivery of such wheat, the defendant advanced the plaintiff $769.45, thereon, and executed and delivered to the plaintiff a receipt in the following words:

"WINONA, Nov. 22d, 1869.

"Received of A. Nelson, Railroad Order No.—for four hundred ninety-eight and twenty-five-sixtieths bushels No. 1 wheat, and thirteen hundred and fifty-eight bushels No. 2 wheat, as collateral security for advance of seven hundred and sixty-seven and forty-five-one hundreths dollars, which is to be paid, with twelve per cent. interest, on or before June 1, 1870, or the wheat to be sold by me to settle the amount with interest and charges.   Price to be 22 cents less than Milwaukee market prices on day of sale.

JNO. ROBSON."

Nelson v. Robson.

And the plaintiff at the same time executed and delivered to the defendant a receipt in the following words:

"WINONA, Nov. 22d, 1869.

"Received of John Robson seven hundred and sixty-nine and forty-five-one hundreths dollars, in advance on eighteen hundred and fifty-six and twenty-five-sixtieths bushels No. 1 and 2 wheat, Railroad Order No.—, to be paid, with interest at twelve per cent., on or before June 1st, 1870, or wheat sold at that date to pay advances and charges. · Price to be 22 cents less than Milwaukee price on day of sale.

Â. NELSON."

*Held*, that these instruments, so far as they express the terms upon which the wheat was delivered, are a written contract between the parties, and show expressly that the wheat was delivered by the plaintiff, and received by the defendant, as collateral security for the money advanced by the latter to the former; and evidence that the wheat was delivered under a prior parol agreement between the parties for the sale of the wheat to the defendant is incompetent.

When a tender is made which is not entirely sufficient in amount, and the amount due is not known to the plaintiff, making the tender, but is within the exclusive knowledge of the defendant, to whom the tender is made, who refused to communicate the same, and there is evidence tending to show a waiver by the defendant of the actual production of a greater amount of money than the amount tendered, it is not error for the court to refuse to instruct the jury that the plaintiff cannot recover, for the reason that the amount of his tender was not sufficient.

Where seven separate lots of wheat were delivered to the defendant by the plaintiff at different times, as collateral security for separate advances made by the defendant upon each lot so delivered, and a demand made by the plaintiff upon the defendant for four of such separate lots of wheat, accompanied by a tender of an amount of money sufficient to pay all advances and charges by the defendant on the wheat demanded, in an action for damages for the conversion of all the wheat delivered, it was not error for the court to refuse to charge the jury that the plaintiff could not recover in the action, for the reason that the amount of the tender was not sufficient to cover the advances and charges on all the wheat delivered to the defendant.

This action was brought in the district court for Winona county, to recover damages for an alleged conversion, by defendant, of certain wheat, the property of plaintiff. The action

was tried before a jury, who found a verdict for plaintiff. Judgment was entered on the verdict, and the defendant appeals therefrom to this court.   The case is fully stated in the opinion of the court.

MITCHELL & YALE, for Appellant.

CHARLES. C. WILLSON, for Respondent.

*By the Court.*—McMILLAN, J.—This is an action brought by the plaintiff to recover damages for the conversion by the defendant of certain wheat, alleged to be the property of the plaintiff.

By a stipulation which appears in the case, it was agreed between the parties to the action for the purposes of the trial (and for no other purpose,) that the amount of wheat received by the defendant from the plaintiff is correctly stated in the complaint, to-wit:

| | | | | | |
|---|---|---|---|---|---|
| No. One Wheat, | - | - | - | - | 2,113.50-60 bushels. |
| No. Two Wheat, | - | - | - | - 4,868 | " |
| No. Three Wheat, | - | - | - | - | 99.15-60 " |
| Total, - | - | - | - | - | - 7,081. 5-60 " |

also, that the sums of money received by the plaintiff from the defendant, and the dates thereof, are correctly stated in said complaint in this action, to-wit: in the aggregate $2,966.92; also, that the interest thereon to May 27th, 1870, at 12 per. cent., is $161.70; also, that the prices of wheat at Winona, Minnesota, on said 27th day of May, A. D. 1870, were as follows:

Nelson v. Robson.

| No. one wheat was worth per bushel, | - | - | - | 90 cts· |
| No two " " " " | - | - | - | - 86 cts. |
| No. three " " " " | - | - | - | 82 cts. |

that the aggregate market value of said wheat at Winona, Minnesota, on said 27th day of May, A. D. 1870, was $6,170.32; also that defendant had advanced on account of said wheat, in addition to the money paid plaintiff, above mentioned, the following named sums, viz.: for insurance $84.00; for storage $327.78; for freight $632.08 ; total $1,043.86.

The only issues remaining for the determination of the jury were the nature of the contract between the parties, under which the wheat was delivered, and the demand and tender by the plaintiff, as alleged in the complaint.

The plaintiff upon the trial introduced in evidence seven papers, the execution of which at their several dates, respectively, was admitted by the defendant, one of which is as follows:

" WINONA, Nov. 22, 1869.

" Received of A. Nelson, Railroad Order No.— for four hundred ninety-eight and twenty-five-sixtieths bushels No. 1 wheat, and thirteen hundred and fifty-eight bushels No. 2 wheat, as collateral security for advance of seven hundred sixty-seven and forty-five-one hundredths dollars, which is to be paid, with 12 per cent. interest, on or before June 1st, 1870, or the wheat to be sold by me to settle the amount, with interest and charges.    Price to be 22 cts. less than Milwaukee market prices on day of sale.

JNO. ROBSON. "

The remaining six instruments were of a similar character, differing from the above, only, as to date, quantity, and quality of wheat, amount of money advanced, and price.

After the close of the plaintiff's testimony, the defendant in his case in chief introduced and read in evidence, seven papers signed by the plaintiff (the plaintiff's signature to which was admitted,) one of which was in the words following:

"WINONA, Nov. 22d, 1869.

"Received of John Robson seven hundred and sixty-nine and forty-five-one hundredths dollars, in advance on eighteen hundred and fifty-six dollars and twenty-five-sixtieths bushels of No. 1 and 2 wheat, Railroad Order No. —, to be paid, with interest at twelve per cent., on or before June 1st, 1870, or wheat sold at that date to pay advances and charges.   Price to be 22 cts. less than Milwaukee price on day of sale.

A. NELSON."

The other six were of like import and similar, except as to dates, amount of wheat, and amount of advances thereon.

The defendant then called as a witness one John Sherman, who testified, that in the fall of 1869, he was in the employment of the defendant Robson, engaged in buying wheat for him.

The defendant then offered to prove by the witness, that a *verbal* bargain was made, prior to the delivery of any of the wheat in question, between defendant and plaintiff, as follows, viz.: "The defendant agreed to buy of plaintiff, and plaintiff agreed to sell to defendant the wheat in question, on the following terms.   The plaintiff might elect any time up to June 1st, 1870, to demand his pay for said wheat, and that defendant should pay him therefor, the price such wheat was worth in Milwaukee on the day of such demand, less the several sums as stated in the answer, deducting therefrom all sums advanced by him to plaintiff on said wheat, with twelve per cent. interest, and all sums of money advanced on account of said

Nelson v. Robson.

wheat, for freight, insurance or storage; and that all of the wheat referred to in the complaint was received under that agreement; and that the papers offered in evidence by the plaintiff, and by defendant, were executed and delivered by the parties, at the dates of the delivering of the several lots of wheat, as receipts to show the amount of wheat received by defendant, and the amount of money received by plaintiff, under such verbal agreement."

To this offer the plaintiff then and there objected, on the ground that it was incompetent and immaterial, which objection was sustained by the court.

There is no dispute as to the fact that the instruments offered in evidence by the plaintiff were executed at the time of the delivery of the several lots of wheat in question, indeed, the offer of the defendant embraces this as one of the items of proof sought to be introduced.

These instruments, so far as they express the terms upon which the wheat was delivered, are written contracts between the parties, and show, expressly, that the wheat was delivered by the plaintiff, and received by the defendant, as collateral security for the money advances by the latter to the former. They are within the well-established rule, that prior or contemporaneous parol evidence is inadmissible to contradict or vary the terms of a valid written instrument.

The distinct offer of the defendant was to prove a prior parol agreement between the parties for a sale of the wheat embraced in the written contract, by the plaintiff to the defendant.

The contract of sale and delivery is entirely different from, and inconsistent with a contract for the delivery of the same property as collateral security for the payment of money.

To have allowed the defendant's offer, therefore, would have been to have permitted him to vary and contradict the written

contract by proof of a prior parol agreement. The objection to the offer was, therefore, properly sustained.

The defendant requested the court to instruct the jury, " That the plaintiff cannot recover in this action, for the reason, that the amount of his tender was not sufficient to cover the advances, charges, freight and storage made by defendant prior to that time on account of said wheat," which the court refused, and defendant excepted.

Upon the trial the plaintiff called as a witness William D. Hurlburt, who testified as follows: " I saw the defendant at his office in Winona on the 26th and 27th of May last. I had $3,200 in United States legal tender notes, and offered to pay to defendant what might be due to him from plaintiff on the wheat in question. I had the seven papers already in evidence (by the plaintiff) with me. Defendant refused to receive the money. I told him I wanted to pay the amount of advances, interest and expenses mentioned in these seven receipts, and wanted the wheat. This was on the 27th. I did not ask for a statement of the charges that morning, but had done so the night before. He refused to receive any money, and claimed he owned the wheat, and had bought it from Nelson. I was acting for Nelson. He had authorized me to do so. I told defendant I was authorized by plaintiff. He said he understood Nelson had hired me to do a job he dare not do himself. He said plaintiff had no wheat there with him. * * I told him I was anxious to know what the amount of his claim was. He said he had bought the wheat of Nelson. I passed him the package of money. He looked at it, and passed it back to me. He wanted to know if I had counted the money. I told him I had. He run the bills over, and then passed them back to me. I then made an offer to him to pay the advances, interest and charges on the first five receipts. He refused to accept. I then tendered him the whole $3,200, to pay ad-

vances, expenses and charges, on the first four receipts. He made no reply, but turned away. He did not give me any statement as to the amount of freight, storage, insurance, or expenses. No sum was named ·by him. As Nelson's agent, after the tender, I demanded the wheat. He refused to deliver it. He said he would not. He claimed to own it by virtue of these papers. I presented these same papers to him. I had them in my hand at the time. I demanded to be put in possession of the wheat, or the papers that would produce it. Nothing was said as to whether he had disposed of the wheat, or that he had surrendered the orders to the railroad company."

It is true as appears by the stipulation that the amount of the advances, interest, charges and expenses were greater than the amount of money produced and tendered by the plaintiff's agent to the defendant, but the amount of the charges and expenses were unknown to the plaintiff at the time, and were within the exclusive knowledge of the defendant, who refused to communicate the amount to the plaintiff, and refused, unconditionally, to receive the amount of money · tendered by the plaintiff, or any money, on the ground that he, the defendant, was the owner of the wheat, making no objection to the tender · on any other ground. Under these circumstances, if the tender was not sufficient in all respects, there was, at least, evidence tending to show a waiver of the actual production of a greater amount of money, sufficient to send the question to the jury. 1 *Greenleaf Ev.* § 603.

But the evidence shows a distinct tender of the sum of $3,200, in payment of the advances, interest, charges and expenses upon the wheat embraced in the first four receipts offered in evidence, and a demand for the delivery of such wheat, which was refused on the sole ground that the defendant had bought and was the owner of the wheat; to this extent the tender and demand were clearly sufficient, and entitled the plaintiff to

recover. Yet under the instruction requested by the defendant, the plaintiff's right to recover any amount would have been entirely defeated. The instruction was properly refused.

Judgment affirmed.