Terry M. SEATON, Appellant,

v.

The COUNTY OF SCOTT, Respondent.

No. C8-86-1751.

Court of Appeals of Minnesota.

April 28, 1987.

Review Denied June 25, 1987.

David G. Johnson, Prior Lake, for appellant.

James T. Martin, Minneapolis, for respondent.

Considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Terry Seaton appeals from a directed verdict in favor of Scott County (County). The court found that the County was immune from suit and that Seaton failed to establish a bridge was defective. We affirm.

### FACTS

In 1980, while taking an evening walk, Terry Seaton was injured when he fell from a county bridge constructed and maintained by Scott County. While he had driven over this bridge before, this was his first trip on foot. As cars approached him from the opposite direction, Seaton would step off the paved area onto the shoulder. As he approached the bridge, he heard a car approaching at what appeared to be excessive speed. Believing he had to move off the road to avoid being hit, and unaware he was on the bridge, he stepped off the road and fell approximately ten feet into the creek below. Seaton suffered injuries to his back and pelvis.

Seaton sued Scott County for negligent design of the road and bridge, claiming the County failed to provide and maintain an adequate pedestrian walkway, failed to provide or maintain adequate lighting, failed to provide or maintain a guardrail, and failed to warn. At the end of the bridge, on each corner, was a wooden post, three feet high, with a strip of reflector tape toward the top. There was indirect lighting of the bridge. No evidence was of-

fered on the design or construction of this bridge or similar bridges. Seaton presented no evidence of prior accidents at the bridge or of any complaints about the bridge.

At the close of Seaton's case in chief, the County moved for a directed verdict on the grounds that the County was immune from liability with respect to its activities in designing and constructing roads and bridges and that Seaton had produced no evidence to establish a standard of care on the part of the County as to design, construction or maintenance of bridges and roads. The motion was granted and Seaton appeals.

## ISSUES

1. Was the absence of guardrails on the bridge an exercise of discretion which entitles the County to immunity under Minn. Stat. § 466.03, subd. 6 (1980)?

2. If the County is immune under Minn. Stat. § 466.03, subd. 6 (1980), was the immunity waived under Minn.Stat. § 466.06 by the County's purchase of liability insurance?

3. Did the trial court err in requiring expert testimony to establish a prima facie case of negligence on the part of the County?

## ANALYSIS

On appeal from a judgment granting a directed verdict, the appellate court makes an independent assessment of whether evidence is sufficient to present a fact question to the jury. *Citizens National Bank of Willmar v. Taylor*, 368 N.W.2d 913, 917 (Minn.1985).

The common law doctrine immunizing local units of government from tort suits was abolished prospectively in *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 292, 118 N.W.2d 795, 803 (1962). Subsequently, the legislature enacted statutes providing for municipal tort liability with certain exceptions. *See* Minn.Stat. §§ 466.02, 466.03 (1980). Municipalities are immune from liability for claims "based upon the performance or the failure to exercise or perform a discretionary func-

tion or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1980). Discretionary immunity must be narrowly construed. *Johnson v. County of Nicollet*, 387 N.W.2d 209, 211 (Minn.Ct. App.1986).

The test for determining whether an act is discretionary or ministerial is "whether an act is a planning decision or is merely 'operational'." *Gonzales v. Hollins*, 386 N.W.2d 842, 845 (Minn.Ct.App.1986). A planning decision is one which involves balancing factors and choosing between alternatives. *Id. See also Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982). An operational act, for which there is no immunity, consists of conduct which puts into effect a predetermined plan. *See Gonzales*, 386 N.W.2d at 845. *See also Hansen v. City of St. Paul*, 298 Minn. 205, 212, 214 N.W.2d 346, 350 (1974).

▮ Counties have a common law duty to maintain streets and sidewalks in reasonably safe conditions and a statutory duty to construct, improve and maintain county highways. *Johnson*, 387 N.W.2d at 211. However, the liability of a municipality is "limited to those cases where it has notice, actual or constructive, of the defective condition." *Hansen*, 298 Minn. at 207–08, 214 N.W.2d at 348.

Appellant in this case relies heavily on *Johnson* and *Ostendorf v. Kenyon*, 347 N.W.2d 834 (Minn.Ct.App.1984). In *Ostendorf* this court reversed a post-trial summary judgment in favor of the state. Plaintiffs were injured in a head-on collision on a state highway and claimed the state failed to properly warn of *known* hazards because it did not post adequate warning signs and because it did not adequately explain warnings in the Minnesota Driver's Manual. *See id.* at 836. The court ruled the compilation of the driver's manual was a "classic case" of state officials balancing various factors and thus claims based on the driver's manual were barred as discretionary. *Id.* at 837.

However, while the original placement of signs on a highway is a discretionary act,

    [A]t some point in the operation and maintenance of a highway, it would be-

come apparent that additional signs were needed. That is the point where the discretion in how to originally place warning signs is exhausted and, as part of maintaining the highway, the State has a duty to erect more or better signs.

*Id.* at 838. The placement of warning signs was not a discretionary act if the State had knowledge of a dangerous situation. *Id.* Key to the result in *Ostendorf* was the fact that plaintiffs introduced evidence that the highway had a history of accidents. *Id.* Plaintiff raised an issue of material fact as to whether the state had notice of a dangerous condition.

■ Seaton claims the County was negligent in failing to warn and failing to place guardrails on the bridge. This is a discretionary act unless the County had notice of a dangerous condition. *See id.*

In *Johnson,* claimants were injured when their car plunged down an embankment. Johnson claimed the county was negligent in failing to place a guardrail along the road. The trial court granted summary judgment for the county and this court reversed, holding

[t]he county's * * * duties to maintain reasonably safe roads *may* encompass the duty to place guardrail along a road that is *known to be hazardous.*

*Johnson,* 387 N.W.2d at 212 (citations omitted; emphasis added). Liability is limited to situations where the municipality has notice of the defect. Unlike *Johnson,* Seaton introduced no evidence at trial to indicate that there were any prior accidents involving that bridge nor did he introduce expert evidence that the bridge was unsafe. His claim of negligence therefore fails for lack of proof the bridge was in a dangerous condition known to the County.

### 2.

■ Seaton claims that the County waived its immunity by purchasing insurance. He is right. Minn.Stat. § 466.06 (1980) provides:

The governing body of any municipality may procure insurance against liability of the municipality and its officers, employees, and agents for damages resulting from its torts and those of its officers, employees, and agents, including torts specified in section 466.03 for which the municipality is immune from liability. * * * The procurement of such insurance constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy * * *.

*Id.*

But the statute merely abolishes the *defense* of immunity under certain circumstances and does not create tort liability where none existed before. *See Hoffert v. Owatonna Inn Towne Motel, Inc.,* 293 Minn. 220, 222, 199 N.W.2d 158, 159–60 (1972).

### 3.

Seaton has failed to present a prima facie case of negligence. There may be times when a municipality has a duty to act for a specific group of people and breach of that duty is negligence. *Andrade v. Ellefson,* 391 N.W.2d 836, 841 (Minn.1986). In *Andrade* the court noted:

Although there "is no bright line," we noted "at least four factors" relevant to the existence of a special duty: (1) actual knowledge by the municipality of the dangerous condition, (2) reasonable reliance on specific representations of the municipality, (3) a statutory duty for municipal protection of a particular class, and (4) municipal action which increases the risk of harm.

*Id.* at 841.

■ Even if one assumed a duty of care on the part of the County, Seaton failed to introduce any evidence to show the County breached the duty. Seaton's complaint alleged negligent design of the road and bridge. In order to create a jury question Seaton must show that the County deviated from the usual standard of care.

Whether an expert opinion is necessary to assist the trier of fact in determining whether the standard has been met is at the discretion of the trial court. The discretion is broad and will not be reversed absent clear abuse of the discretion. *Kanter v. Metropolitan Medical Center,* 384 N.W.2d 914, 916 (Minn.Ct.App.1986).

Rule 702 of the Minnesota Rules of Evidence governs the admission of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Not only is expert testimony permissible, but

if it would be speculative for the factfinder to decide the issue of negligence without having the benefit of expert testimony on the standard of care, the expert testimony is necessary.

*Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271, 279 (Minn.1985). The trial court was well within its discretion in deciding expert testimony was needed to develop the standard of care.

■ Seaton further relies on the doctrine of res ipsa loquitur. The doctrine applies only if:

(1) the accident would not normally have occurred absent some negligence;

(2) the harm-producing instrumentality was under the exclusive control of the defendant; and

(3) the plaintiff was not contributorily negligent.

*See Spannaus v. Otolaryngology Clinic*, 308 Minn. 334, 337, 242 N.W.2d 594, 596 (1976); *see also* Note, *Exclusive Control Under Strict Liability and Res Ipsa Loquitur*, 11 Wm. Mitchell L.Rev. 599, 604 (1985). Some courts also require that the evidence as to the true explanation of the event must be more readily accessible to the defendant than the plaintiff. *See Prosser & Keeton on the Law of Torts* § 39 at 244 (W. Keeton 5th ed. 1984). The record does not support application of the doctrine.

### DECISION

Scott County is immune from suit based on defective design and construction of a bridge because Seaton failed to show any prior knowledge of a dangerous condition and failed to introduce expert testimony showing the standard of care or breach thereof. Because we find no liability, the issue of waiver of immunity is irrelevant. The trial court is affirmed.

Affirmed.